# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **QUINTEZ TALLEY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **R. DOYLE, CYNTHIA LINK, LAURA** | : | |
| **BANTA, GENA CLARK, PA. DEPT. OF** | : | |
| **CORRECTIONS, GEORGE ONDREJKA,** | : | |
| **CAPTAIN MASCELLINO, JOHN** | : | |
| **WETZEL, LT. KOVIYAK, UNKNOWN** | : | |
| **EXTRACTION TEAM, and MHM** | : | **NO. 19-1588** |

## MEMORANDUM OPINION

**Savage, J.**                                                          **November 14, 2019**

Plaintiff Quintez Talley, a prisoner proceeding *pro se* and *in forma pauperis*, filed this civil action asserting that the defendants violated the Americans with Disabilities Act[1] (ADA) and the First, Eighth and Fourteenth Amendments.[2]  He also asserts a claim for federal conspiracy and several state law torts.  He has sued the Pennsylvania Department of Corrections (DOC), Secretary John Wetzel, former Superintendent Cynthia Link, Deputy Superintendent Laura Banta, Corrections Evaluation Supervisor George Ondrejka, Major Gina Clark, Captain David Mascellino, Lieutenant David Jankoviak, the

---

[1] Talley states in the opening paragraph of his complaint that this action is authorized by the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA), 29 U.S.C. § 701, but he asserts no RA claim.  *Id.* ¶ 1.  The RA, "the first federal statute to provide broad prohibitions against discrimination on the basis of disability, applies only to programs and activities receiving federal financial assistance." *Yeskey v. Commw. of Pa. Dep't of Corrs.*, 118 F.3d 168, 170 (Pa. Commw. Ct. 1997).  Talley does not allege that the Department of Corrections (DOC), a Pennsylvania state agency, receives federal assistance.  In addition, our analysis of Talley's ADA claim would apply to any RA claim because the RA is "substantially similar" to the ADA.  *Id.*

[2] May 29, 2019 Order (ECF No. 5).  This is the thirteenth of 14 civil actions that Talley has filed in this district since 2018 against Department of Corrections (DOC) personnel and others working at DOC prisons.

Unknown Extraction Team (collectively, Commonwealth Defendants), Dr. R. Doyle, and MHM (together, MHM Defendants).[3]

All defendants have moved to dismiss for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act (PLRA) and failure to state a claim. The Commonwealth Defendants also invoke qualified and sovereign immunity.[4]

## Background[5]

On January 9, 2018, Talley smeared feces on the wall of his Psychiatric Observation Cell (POC) to ward off the evil spirits he believed to be present there.[6] When he was told that he was being discharged from the POC, he informed a nurse he was suicidal.[7] He was then recommitted.[8]

On January 10, 2018, Talley told Doyle that he was suicidal, had been hearing voices, and wanted to sign himself into the Mental Health Unit (MHU).[9] Doyle responded that Talley required a greater level of mental healthcare, but he had been directed by

---

[3] Compl. (ECF No. 2). Talley does not state most of the defendants' titles, and he misspells Clark's first and Jankoviak's last names. The correct titles and spellings are supplied by defendants.

[4] Talley argues that mandatory screening of his complaint under 28 U.S.C. §§ 1915(e) and 1915A prohibits defendants from later filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Pl.'s Brief Response to Defs.' Mot. to Dismiss at 3 (ECF No. 22). *See also* May 29, 2019 Order. He is wrong. Defendants may move to dismiss any claims that survive the court's preliminary screening. *See, e.g., Moore v. Middlesex Cty. Prosecutors Office*, 738 F. App'x 100, 102 (3d Cir. 2018) (noting district court dismissed claim under Rule 12(b)(6) after allowing it to proceed beyond § 1915A screening).

[5] The following facts are taken from the detailed complaint. For the purposes of this motion, they are considered as true.

[6] Compl. ¶¶ 8-9. A POC is "[a] cell located in the infirmary area of the facility that is used to hold inmates who are mentally decompensating to the point where they are considered a danger to themselves, other inmates, and/or property. These cells provide a means of re[s]training (sic) the inmate, if necessary, and allow for constant supervision of the inmate to be maintained in order to treat the inmate." DC-ADM 13.8.01.

[7] Compl. ¶ 10.

[8] *Id.*

[9] *Id.* ¶ 11.

Link, Banta, Ondrejka and Clark to place Talley in restraints anytime he claimed he was suicidal.[10]  Doyle told Talley that this practice had been implemented to deter him from filing additional lawsuits.[11]

That evening Sergeant Mower informed Talley that Doyle was discharging him from the POC.[12]  Talley claimed he was suicidal and asked to speak to a psychiatrist.[13]  Mower responded that pursuant to orders from Link, Banta and Clark, if Talley claimed he was suicidal upon his discharge from the POC, he would be placed in a Diversionary Treatment Unit (DTU) camera cell in restraints.[14]  Mower left and returned with Jankoviak and the Extraction Team.[15]  Talley was escorted to a DTU cell, where he was placed in restraints.[16]

Talley attempted suicide that night.[17]  He was taken to medical triage but recommitted to the POC by the on-call psychiatrist.[18]  Although it was not part of the commitment order, Talley was placed in restraints in the POC.[19]  He complains that the POC was "freezing cold" and that he was "virtually unable to eat &/or properly use the facilities" there.[20]

---

[10] *Id.* ¶¶ 12-13.

[11] *Id.* ¶ 14.

[12] *Id.* ¶ 15.

[13] *Id.*

[14] *Id.*

[15] *Id.* ¶ 16.

[16] *Id.* ¶¶ 17-18.

[17] *Id.* ¶ 19.

[18] *Id.*

[19] *Id.*

[20] *Id.* ¶ 20.

Talley alleges that the DOC and Doyle violated his rights under the ADA and the First, Eighth, and Fourteenth Amendments.[21] He claims that Doyle and MHM committed medical malpractice when Doyle refused to allow Talley to sign himself into the MHU in retaliation for his prior lawsuits challenging the conditions of his confinement.[22] He alleges that the DOC, Wetzel, Link, Banta, Ondrejka, Clark and Mascellino conspired to violate his rights under the ADA and the First, Eighth, and Fourteenth Amendments by implementing and carrying out a policy whereby anytime he claimed he was suicidal he was placed in restraints in retaliation for his prior lawsuits.[23] He claims that Jankoviak and the Extraction Team violated his Eighth Amendment rights and committed coercion, extortion and assault and battery when they removed him from the POC and placed him in the DTU in restraints rather that providing him the opportunity to speak to mental health staff about his suicidal ideation.[24]

## Standard of Review

Pursuant to Rule 12(b)(6), a court may dismiss all or part of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading only "facts that are 'merely consistent with' a defendant's

---

[21] *Id.* ¶ 21.

[22] *Id.*

[23] *Id.* ¶ 22.

[24] *Id.* ¶ 25.

liability" is insufficient and cannot survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 557).

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which, if proven later, support a conclusion that the cause of action can be established.

In assessing the sufficiency of a complaint, a court must: (1) identify the elements of the causes of action; (2) disregard conclusory statements, leaving only factual allegations; and (3) assuming the truth of those factual allegations, determine whether they plausibly give rise to an entitlement to relief. *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (internal quotation marks and citations omitted) (quoting *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

### Analysis

### *Exhaustion of Administrative Remedies*

Before filing suit challenging prison life under any federal law, a prisoner must exhaust all available administrative remedies. *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983 or any other federal law] until administrative remedies as available are exhausted." 42 U.S.C. § 1997(e)(a). To properly exhaust, the prisoner must comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). He must pursue all available steps in the process. *Id. See also Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016); *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004).

If he fails to do so, his action must be dismissed. *Spruill*, 372 F.3d at 227.

The exhaustion requirement is mandatory, precluding judicial discretion. A court may not excuse a failure to exhaust even if there are "special circumstances." *Ross*, 136 S. Ct. at 1856. The only exception is where an administrative remedy is not available. Section 1997e(a) of the PLRA only requires the exhaustion of available remedies. Stated differently, if the administrative remedies are not available, there is nothing to exhaust.

The administrative remedies are deemed unavailable where: (1) the administrative procedure, in practice, does not afford inmates a real chance for redress because the prison administrators refuse or are unable to process the grievance; (2) the procedure is so "opaque" that inmates cannot "discern or navigate it"; and (3) the prison administrators prevent or thwart inmates from pursuing grievances through the process by "machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60.

The DOC maintains an official grievance process entitled the "Inmate Grievance System" and is governed by Administrative Regulation 804 (DC-ADM 804).[25] Defendants argue that Talley failed to exhaust administrative remedies because he did not take any of the steps set forth in DC-ADM 804.[26] As the Commonwealth Court has explained:

> While DOC policy DC–ADM 804 provides that claims of inmate abuse can be the subject of a grievance (DC–ADM 804 Procedures Manual § 1(B)(10)), the DOC policy governing inmate abuse, DC–ADM 001, provides that inmates are not required to use the prison grievance procedure to report abuse, and may also proceed by other means, including notifying a staff member of the abuse. DC–ADM 001 § IV(D).

---

[25] DC-ADM 804.VI.A.8.

[26] Commw. Defs.' Memo. of Law in Support of Mot. to Dism. at 4-8; MHM Defs.' Brief in Support of Mot. to Dism. at 6-8.

*Parran v. Rozum*, No. 239 C.D. 2012, 2013 WL 3942101, at *3 (Pa. Commw. Ct. Jan. 4, 2013) (unreported panel decision).

DC-ADM 001 defines "abuse" as the use of excessive or improper force, an unwarranted life-threatening act, or a threat to inflict physical injury.[27]  It excludes "claims of inadequate medical or intentionally denied medical care."[28]

Talley alleges that he made an on-camera verbal complaint to prison personnel regarding the denial of mental health treatment and the use of restraints.[29]  But, MHM and Dr. Doyle's denial of mental health treatment in the MHU does not constitute abuse.[30]  Rather, Talley claims they intentionally denied him mental health treatment.[31]  Because Talley failed to grieve this claim through the procedures provided by DC-ADM 804, we shall dismiss it for failure to exhaust administrative remedies.

On the other hand, Talley's claim that the Commonwealth Defendants improperly placed him in restraints constitutes an allegation of abuse.   They argue that he failed to grieve this issue under DC-ADM 804, but they fail to explain why he was required to do so where that policy provides that "[a] grievance dealing with allegations of abuse shall be handled in accordance with Department policy DC-ADM 001, 'Inmate Abuse.'"[32]  In *Parran*, the court concluded that dismissal was inappropriate at the pleadings stage where the defendants failed "to discuss whether the grievance procedure is mandatory for abuse claims, in light of the language in DC–ADM 001."  2013 WL 3942101, at *3.

---

[27] DC-ADM 001, Glossary of Terms 1.

[28] *Id.*, Glossary of Terms 2.b.

[29] Compl. ¶ 17.  *See also* DC-ADM 001.IV.D.1 (inmate may report abuse verbally).

[30] *See* Compl. ¶ 21.

[31] *See* DC-ADM 001, Glossary of Terms 1.

[32] Comm. Defs.' Memo. of Law in Support of Mot. to Dism. at 4-8; DC-ADM 804 § 1.D.2.

Because Talley exhausted the administrative remedies available to him under DC-ADM 001, we find dismissal for failure to exhaust administrative remedies unwarranted as to the claims against the Commonwealth Defendants at this time.

*ADA Claims*

Title II of the ADA makes it unlawful for public entities, including prisons, to discriminate against the disabled in the provision of services, programs and activities. *Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015) (citing *Tennessee v. Lane*, 541 U.S. 509, 517 (2004)); *Chisholm v. McManimon*, 275 F.3d 315, 325 (3d Cir. 2001) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)). To state an ADA claim, the plaintiff must allege "that he is a 'qualified individual with a disability' [and] that he was excluded from a service, program, or activity of a public entity . . . because of his disability." *Disability Rights N.J., Inc.*, 796 F.3d at 301 (quoting 42 U.S.C. § 12102(1)(A)). Mental illness is a disability under the ADA. 42 U.S.C. § 12102(1)(A).

Talley sues the DOC and Wetzel, Link, Banta, Ondrejka, Clark, and Mascellino in their official capacities for denying him placement in the MHU and POC because of the lawsuits he has filed against the DOC and Wetzel.[33] Thus, by his own allegations, this denial was not "because of his disability." *Disability Rights N.J., Inc.*, 796 F.3d at 301.

Talley's claim for retaliation under Title V of the ADA fails for a similar reason. Talley must allege facts showing (1) he engaged in protected activity, (2) he suffered an adverse action after or contemporaneous with the protected activity, and (3) a causal connection between the protected activity and the adverse action. *Fogleman v. Mercy*

---

[33] *Id.* ¶¶ 21-22.

*Hosp. Inc.,* 283 F.3d 561, 567-68 (3d Cir. 2002) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir.1997)). However, his allegations demonstrate a lack of a causal connection between the protected activity and the adverse action he suffered. According to Talley, he was placed in restraints "because of [his] numerous civil actions" against DOC personnel.[34]

### Section 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The DOC, as a state agency, is not a "person" under § 1983. *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 847 (3d Cir. 2014). Nor do the facts pled by Talley establish a plausible constitutional violation against any individual defendant.[35]

### First Amendment Claims

To state a First Amendment retaliation claim, Talley must allege facts showing: (1) the conduct that instigated the retaliatory action was constitutionally protected; (2) he suffered an adverse action as a result of the prison official's retaliatory acts; and (3) there was a causal link between the exercise of his constitutional right and the adverse action, that is, his constitutionally protected conduct was a substantial or motivating factor in the

---

[34] *Id.* ¶ 14. Talley claims that he was the only prisoner in the DOC placed in restraints for "requesting mental health treatment." *Id.* ¶ 20. He alleges no facts in support of his conclusion that there is a causal connection between his request for treatment and his placement in restraints. Thus, we do not consider the allegation.

[35] We have already dismissed all § 1983 claims against the individual defendants in their official capacities. May 29, 2019 Order at 1.

state actor's decision to take the adverse action. *Rauser v. Horn*, 241 F. 3d 330, 333 (3d Cir. 2001).

While conceding that filing a lawsuit is constitutionally protected, Commonwealth Defendants claim that Talley fails to specify the lawsuits he filed.[36] They have notice of Talley's prior lawsuits. He has filed 15 lawsuits against DOC personnel since 2016, as a docket search shows.[37] Contrary to Commonwealth Defendants' assertion, three of these were filed prior to the events at issue here.[38]

Commonwealth Defendants also argue that "the alleged retaliatory conduct is not sufficiently adverse" because it resulted in no lasting injury and would not "deter a person of ordinary firmness" from exercising his rights, as demonstrated by the fact that Talley continued to file lawsuits.[39] We disagree that placement in a cold cell in restraints for 24 hours was insufficiently adverse. As *Allah v. Seiverling*, cited by Commonwealth Defendants, observes, "[g]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." 229 F.3d 220, 224-25 (3d Cir. 2000) (quotation omitted) (administrative segregation could be sufficiently adverse). Further, if Commonwealth Defendants were correct that the filing of a lawsuit

---

[36] Comm. Defs.' Memo. in Support of Mot. to Dism. at 13 (citing *Wicker v. Shannon*, No. 3:CV-09-1629, 2010 WL 3812351, at *6 (M.D. Pa. Sept. 21, 2010)).

[37] Commonwealth Defendants cite several of these lawsuits. *Id.* at 14 n.5.

[38] These lawsuits include *Talley v. Supreme Court of Pa.*, No. 2:16-cv-6541 (E.D. Pa. Dec. 20, 2016); *Talley v. Ionota*, 1:18-cv-0011 (E.D. Pa. Jan. 2, 2018); and *Talley v. Pressley*, No. 2:18-cv-0014 (E.D. Pa. Jan. 2, 2018).

[39] Comm. Defs.' Memo. in Support of Mot. to Dism. at 14 (quoting *Allah v. Sieverling*, 229 F.3d 220, 225 (3d Cir. 2000)).

indicated that the retaliation was not adverse enough, no plaintiff could ever maintain a retaliation claim.

Talley also pleads a causal link between his prior lawsuits and his placement in restraints. He claims that Doyle told him that "because of [his] numerous civil actions" against DOC personnel anytime he indicated he was suicidal he would be denied treatment and placed in restraints "as a deterrent."[40] He alleges that he was singled out for this treatment "as punishment . . . for having been successful in redressing previous violations by Defendant DOC and Wetzel."[41]

Commonwealth Defendants argue that they are protected by qualified immunity. Government officials are immune from suit when their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

In evaluating a qualified immunity defense, we ask two questions. First, do the alleged facts, viewed in a light most favorable to the plaintiff, demonstrate that the official's conduct violated a statutory or constitutional right? *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 762 (3d Cir. 2019) (citing *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014)). Second, was the right "clearly established" at the time of the challenged conduct? *Id.*

We may address these questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In other words, if we find that the alleged right was not clearly

---

[40] Compl. ¶¶ 14, 20, 22.

[41] *Id.* ¶ 22.

established, the inquiry ends and the official is entitled to qualified immunity. To deny immunity, there must be sufficient precedent at the time of the action to put the official on notice that his or her conduct was prohibited. *Baloga*, 927 F.3d at 762 (quoting *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016)).

The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Applying this test, we find that the "right of prisoners to petition the court" is clearly established. *Atkinson v. Taylor*, 316 F.3d 257, 269 (3d Cir. 2003) (*citing Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981)). Further, "a reasonable prison official would know that he violates this right if he retaliates against a prisoner for filing a lawsuit." *Atkinson*, 316 F.3d at 269. Commonwealth Defendants are not entitled to qualified immunity on Talley's First Amendment retaliation claim.

### Eighth Amendment Claims

Talley alleges that the Commonwealth Defendants violated his Eighth Amendment rights by implementing and carrying out a policy under which he was placed in restraints whenever he claimed he was suicidal and requested mental health treatment.[42] He alleges that this policy resulted in his placement in restraints in a cold cell for 24 hours.[43]

The Eighth Amendment prohibits punishment that "violates civilized standards of humanity and decency." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (citing *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992)). To state a claim under the Eighth

---

[42] *Id.* ¶¶ 20, 22-25.

[43] *Id.* ¶¶ 20, 25.

Amendment, a plaintiff must allege prison conditions that "deprived him of life's minimum necessities, that the deprivation was sufficiently serious, and that a prison official acted with deliberate indifference in subjecting him to that deprivation." *Renchenski v. Williams*, 622 F.3d 315, 338 (3d Cir. 2010) (quotation omitted).

Here, Talley does not allege that he was denied any basic necessity. He claims that the refusal to provide "him the opportunity to speak to psychiatric/psychological staff" after he claimed he was suicidal violated the Eighth Amendment.[44] The Eighth Amendment protection against cruel and unusual punishment extends to a prisoner's right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 102, 103 (1976) (internal citations omitted). Failure to provide adequate medical care violates a prisoner's right to be free from cruel and unusual punishment when it results from "deliberate indifference to a prisoner's serious illness or injury." *Id.* at 104-05.

To state an Eighth Amendment claim arising out of the failure to treat his medical condition, Talley must plead sufficient facts that, if proven, would establish two elements: (1) he had a serious medical need; and (2) prison officials were deliberately indifferent to that need. *Spruill*, 372 F.3d at 235-36 (3d Cir. 2004).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). *See also Atkinson v. Taylor,* 316 F.3d 257, 272-73 (3d Cir. 2003). A medical condition is serious when the denial or delay of medical treatment causes "unnecessary or wanton infliction of pain." *Monmouth Cty.*, 834 F.3d at 347.

---

[44] *Id.* ¶ 25.

Deliberate indifference to a serious medical need is shown when: (1) a doctor intentionally inflicts pain on a prisoner; (2) a prison official denies reasonable requests for medical treatment, exposing the inmate to undue suffering or the threat of tangible residual injury; or (3) an official intentionally refuses to provide care even though he is aware of the need for such care. *Spruill*, 372 F.3d at 235. A prison official is deliberately indifferent if he disregards a known excessive risk to the inmate's health and safety. It is not enough that the official is aware of facts from which an inference can be drawn that the inmate is exposed to a substantial risk of serious harm. The official must actually draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

Talley's allegations demonstrate a lack of deliberate indifference. The incident in question began with him being housed in the POC on one-on-one suicide watch after he "attempted suicide by way of fire."[45] After he was told he was being discharged from the POC, he told a registered nurse he was suicidal.[46] She contacted a psychiatrist and he was recommitted.[47] The following morning he told Dr. Doyle he was suicidal and wanted to sign himself into the MHU.[48] Doyle refused and discharged Talley from the POC later that evening.[49] At that time, Talley again claimed he was suicidal and asked to speak to another psychiatrist.[50] His request was refused and he was placed in restraints in the

---

[45] *Id.* ¶ 10.

[46] *Id.*

[47] *Id.*

[48] *Id.* ¶ 11.

[49] *Id.* ¶¶ 13, 15.

[50] *Id.* ¶ 15.

DTU.[51]  That night he attempted suicide and was taken to medical triage.[52]  A psychiatrist was consulted and Talley was recommitted to the POC.[53]  Although not ordered by the psychiatrist, Talley was placed in restraints.[54]

At most, Talley alleges a disagreement over his treatment.  At the same time he complains that Doyle is "incompetent," he disregards the consultations between psychiatrists and other prison personnel in which he did not directly participate.[55]  He dismisses his placement in restraints in the DTU as inadequate and improper.  He insists he should have been given "the opportunity to speak [directly] to psychiatric/psychological staff" other than Doyle.[56] But, disagreement as to proper treatment does not establish an Eighth Amendment violation.  *Spruill*, 372 F.3d at 235-36.

The allegations in the complaint show that Commonwealth Defendants were not deliberately indifferent to Talley's suicidal threats and self-injurious behavior.  Rather, as alleged by Talley, they chose to handle them in a manner other than what he preferred.  He cannot make out a claim for deliberate indifference to his need for mental health treatment.

Talley also complains that he was kept in restraints for 24 hours, "virtually unable to eat &/or use properly use the facilities," and that the cell was cold.[57]  We analyze Talley's claim as alleging both excessive force and unconstitutional conditions of his

---

[51] *Id.* ¶¶ 16, 18.

[52] *Id.* ¶ 19.

[53] *Id.*

[54] *Id.* ¶¶ 19-20.

[55] *Id.* ¶ 24.

[56] *Id.* ¶ 25.

[57] *Id.* ¶¶ 20, 25.

confinement.  *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000) (analyzing challenge to use of restraint chair under both standards).

Where a prisoner alleges excessive force, "the subjective inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  The inmate's injury must objectively be more than *de minimis*.  *Id.* (citing *Hudson*, 503 U.S. at 9-10).  Where a prisoner challenges the conditions of his confinement, we apply a deliberate indifference standard.  *Id.* (citing *Farmer*, 511 U.S. at 837).  The inmate must have been objectively "denied the minimal civilized measure of life's necessities.'"  *Id.* (quoting *Hudson*, 503 U.S. at 9).

Talley fails to allege constitutionally violative use of force or conditions of confinement.  Although Talley complains it was difficult to eat and use the restroom while he was restrained, he does not actually allege that he was unable to do so.[58]  In addition, the use of restraints for a relatively short amount of time for a legitimate purpose does not establish an Eighth Amendment violation.  *Diaz v. Dir. Fed. Bur. of Prisons*, 716 F. App'x 98, 101 (3d Cir. 2017) (use of four-point restraints for 24 hours and ambulatory restraints for 20 hours did not violate Eighth Amendment); *Abdullah v. Seba*, 658 F. App'x 83, 85 (3d Cir. 2016) (use of ambulatory restraints for 24 hours did not violate Eighth Amendment).  Inmate safety is a legitimate purpose.

Nor does Talley's confinement to a cold cell for 24 hours constitute cruel and unusual punishment.  *See Burkholder v. Newton*, 116 F. App'x 358, 363 (3d Cir. 2004) (inmate failed to state Eighth Amendment claim where he spent 30 days in cell "so cold

---

[58] *Id.* ¶ 20.

that it caused pain in his legs" but failed to allege prison officials were made aware of the temperature); *Gans v. Rozum*, 267 F. App'x 178, 179 n.1 (3d Cir. 2008) (allegations of "occasional cold cell . . . not sufficiently serious" to state Eighth Amendment claim).

Fourteenth Amendment Claims

Talley alleges that his transfer to the DTU and placement in restraints there for 24 hours violated the Fourteenth Amendment's Privileges and Immunities Clause and Due Process Clause.[59] He has not stated a cause of action under either clause.

The Privileges and Immunities Clause reads: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. art. IV, § 2. It "prevents a State from discriminating against citizens of other States in favor of its own." *Lee v. Minner*, 458 F.3d 194, 197 (3d Cir. 2006) (quoting *Hague v. CIO*, 307 U.S. 496, 511 (1939)), *abrogated on other grounds by McBurney v. Young*, 569 U.S. 221 (2013). Talley fails to allege that he is a citizen of a state other than Pennsylvania, let alone that he was treated differently for that reason.

The due process analysis starts with determining whether the liberty interest asserted is one that is protected by the Fourteenth Amendment. *Montanez v. Sec'y Dep't of Corr.*, 773 F.3d 472, 482-83 (3d Cir. 2014) (quoting *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 663 (3d Cir. 2011)). If it is a protected interest, we must then determine what process is necessary to protect it. *Newman v. Beard,* 617 F.3d 775, 783 (3d Cir. 2010) (citation omitted). If the interest is not protected, no process is necessary. Thus, at the threshold, the plaintiff must establish that he had a protected liberty interest that triggered due process rights. *See Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002)

---

[59] *Id.* ¶¶ 34-35.

(finding that succeeding on a due process claim requires demonstrating that the plaintiff was deprived of a liberty interest).

Prisoners do not enjoy the same liberty interests as other citizens. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995). Incarceration "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977)). "To rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which . . . imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.'" *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 559 (3d Cir. 2017) (quoting *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)) (emphasis in *Griffin*).

"An inmate does not have a right to be placed in the cell of his choice." *Sheehan v. Beyer*, 51 F.3d 1170, 1174 (3d Cir. 1995) (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montayne v. Haymes*, 427 U.S. 236, 242 (1976). Accordingly, Talley has not stated a Fourteenth Amendment claim based on his placement in the DTU.

Nor has he stated a claim based upon his placement in restraints for 24 hours. Placement in restraints for a short period of time is not an atypical and significant hardship for a prisoner. Courts have repeatedly held that placement in restraints for similar or longer periods does not implicate a liberty interest. *See Key v. McKinney*, 176 F.3d 1083,

1085, 1087 (8th Cir. 1999) (affirming dismissal of procedural due process claim where prisoner was placed in handcuffs chained to leg shackles for 24 hours); *Williams v. Burton*, 943 F.2d 1572, 1574, 1576-77 (11th Cir. 1991) (no procedural due process claim where prisoner was placed in four-point restraints and his mouth taped shut for 28.5 hours), *cert. denied*, 505 U.S. 1208 (1992); *Shand v. Chapdelaine*, No. 17-1947, 2018 WL 279980, at *2-4 (D. Conn. Jan. 3, 2018) (dismissing procedural due process claim where prisoner placed in "handcuffs, leg irons, and a tether chain connecting his hands to his legs" for three days); *Grady v. Holmes*, No. 406-123, 2007 WL 2507395, at *3 (S.D. Ga. Aug. 30, 2007) (placement in restraint chair for 44 hours did not constitute procedural due process violation).

Federal Conspiracy

To state a claim for conspiracy under § 1983, Talley must allege: (1) the existence of an agreement between two or more co-conspirators; (2) the conspirators deprived him of a constitutional or federally protected right; and (3) they acted under color of state law. *Lazaridis v. Wehmer*, 591 F.3d 666, 672 (3d Cir. 2010); *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by U.A. Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003). Talley pleads that the Commonwealth Defendants, acting pursuant to a grant of state authority, had an agreement to place him in restraints whenever he claimed he was suicidal to deter him from filing lawsuits against the DOC.[60] This agreement, if his allegations are proven true, resulted in the deprivation of his First Amendment rights only. Thus, we allow his conspiracy claim to proceed as to those allegations but dismiss it as to all others.

---

[60] *Id.* ¶ 22.

*State Claims*

Talley asserts state law "coercion and/or extortion"[61] and assault and battery claims against Jankoviak and the Extraction Team.[62]  However, as state employees acting within the scope of their employment, these defendants enjoy sovereign immunity, including as to intentional torts.  *Holt v. Nw. Pa. Training & P'ship Consortium, Inc.*, 694 A.2d 1134, 1140 (Pa. Commw. Ct. 1997).  Accordingly, we dismiss Talley's state law claims.

*Injunctive and Declaratory Relief Claims*

Talley seeks a declaration "that the use of force and the ongoing use of body restraints is unconstitutional."[63]  As we have noted, that is not the law.  *See Fuentes*, 206 F.3d 335, 345 (3d Cir. 2000) (force may be "applied in a good-faith effort to maintain or restore discipline," but not "maliciously and sadistically to cause harm"); *Key*, 176 F.3d at 1086-87 (use of restraints for limited period and legitimate purpose does not violate Eighth or Fourteenth Amendments).

Talley also seeks an injunction compelling Wetzel to prohibit the use of body restraints as punishment throughout the DOC.[64]  The Eighth Amendment prohibits only punishment that is "cruel and unusual."  U.S. CONST. amend. VIII.  As discussed, not every use of restraints rises to that level.  *Diaz*, 716 F. App'x at 101; *Abdullah*, 658 F. App'x at 85.  Therefore, we dismiss Talley's claims for declaratory and injunctive relief.

---

[61] Pennsylvania law does not recognize extortion or coercion as a cause of action.  *Rader v. ING Groep NV*, 497 F. App'x 171, 175 (3d Cir. 2012); *Benigno v. Flatley*, No. 01-CV-2158, 2001 WL 1132211, at *1 (E.D. Pa. Sept. 13, 2001).

[62] Compl. ¶ 25.

[63] *Id.* ¶ 26.

[64] *Id.* ¶ 21.  Although "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims," Wetzel, as DOC secretary, retains authority over Talley at his new location at SCI Fayette.  *Id.* ¶ 2; *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003).

**Conclusion**

Talley sufficiently alleges that the Commonwealth Defendants conspired to retaliate against him for exercising his First Amendment rights. All other claims are dismissed.